In the Matter of Leonard V. KRAUS and Florence M. Kraus, Debtors.

Bankruptcy No. BK86–158.

United States Bankruptcy Court, D. Nebraska.

March 19, 1986.

Matthew Hanson, Crete, Neb., for creditor.

Alan Kirshen, Omaha, Neb., for debtor.

## ORDER RE MOTION FOR RELIEF FROM STAY

TIMOTHY J. MAHONEY, Bankruptcy Judge.

The Crete State Bank filed a Motion for Relief from Stay on February 10, 1986. Preliminary hearing was held on March 6, 1986, and final evidentiary hearing was held on March 18, 1986. Appearing on behalf of the Crete State Bank was Matthew Hanson of Steinacher, Vosoba & Hanson of Crete, Nebraska. Appearing on behalf of the debtor was Alan Kirshen of Omaha, Nebraska.

In summary, the evidence presented by the moving party was that in July of 1981 the debtors executed a promissory note in the amount of $254,500 and, to secure said note, executed a second real estate mortgage in favor of the moving party. Payments on the note were not timely made and the Bank filed a petition for foreclosure of the real estate mortgage and obtained a decree of foreclosure in April of 1985. Debtors exercised their State law rights to stay the sheriff's sale for nine months and in January of 1986, when the nine-month stay was about to expire, the debtors filed a Chapter 11 bankruptcy.

The evidence of the Bank is that the land has declined significantly in value since the note went into default and since the date of the foreclosure decree. Further, the land values have continued to decline even since the filing of the bankruptcy in January of 1986. The mortgage, which is now merged into the State Court judgment, required the debtors to keep the buildings on the real estate insured in the amount of $25,000 with a loss payable clause naming the Bank. The evidence is in conflict as to whether or not insurance coverage was obtained, but there is no disagreement that a new insurance policy obtained by the debtors in January of 1986 did not provide coverage for the benefit of the Bank.

The debtors do not dispute that they have no equity in the property. They argue, however, that the property is necessary for an effective reorganization of their farming business, that the land values have stopped declining and, therefore, the Bank has no right to an adequate protection payment and further, since they have paid the taxes and obtained an insurance policy, there is no cause for lifting the automatic stay.

The foreclosure decree found that the amount of the debt on April 12, 1985, was $224,249.58 plus interest. As of the trial date the accrued interest is $105,419.77.

The Bank presented value of the collateral at $135,000. The Bank's expert anticipated future decline in value of less than 2% per month.

The debtors' evidence of value included the testimony of a qualified appraiser who had completed his appraisal on the day of the hearing. His opinion was that the total value of the property as of the date the bankruptcy was filed, January 17, 1986, was $103,000. He believed that the decline since January has been at the maximum rate of seven/tenths of 1% per month and he believed that the rate of decline would be less in the future.

The debtors also presented the appraisal testimony of an appraiser who had given an estimate of value in 1984 and updated his appraisal as of March of 1986. His opinion was that the current value of the property is $87,200.

Pursuant to the State Court foreclosure decree, the principal amount of the debt is $224,249.58 with interest accrued as of April 11, 1985, in the sum of $67,708.92. Interest has accrued thereafter at a daily rate of $110.5888. The decree also added an additional sum of $5.50 for filing of the Notice of Lis Pendens. Interest accrues in the amount of $110.5888 from April 12, 1985, until the date the petition in bankruptcy was filed, January 17, 1986. For bankruptcy purposes, since the creditor was undersecured on the date of filing of the petition, interest does not accrue on the claim thereafter.

The value of the real property on the date the petition was filed was $103,000. The property has declined in value seven/tenths of 1% per month since that date, or approximately $700 per month.

The debtors have no equity in the property.

Concerning necessity for reorganization, the debtors presented evidence that Mr. Kraus works and has worked off the farm for many years. His annual off-farm income is approximately $20,000. Mrs. Kraus testified that she has a beauty parlor on the premises and needs the premises to operate her business. Her annual income from the beauty parlor is approximately $500.

The evidence of all three appraisers and Mrs. Kraus concerning the land is that it is poor crop land and probably best used for pasture. Historically, the debtors have not made a significant amount of their net income from the operation of the farm. The original note and mortgage were executed as a benefit for their son, and not for the purpose of an operating loan for the farm business. The farm business has never been the means of support for this family and the farm business did not provide sufficient income to enable the debtors to make timely interest and principal payments on the note and mortgage.

In most cases this Court would not consider a motion for relief two months into a Chapter 11 case. However, the evidence is clear that these debtors were unable to generate sufficient income from their business operation to make the necessary interest and principal payments prepetition. They were unable to redeem the property from a State Court foreclosure proceeding. They had nine months after the State Court foreclosure decree to create some plan concerning their reorganization possibility. They have now had two months since they filed their bankruptcy petition to present some evidence of the possibility or probability of an effective reorganization.

The evidence is clear to this Court that the farm business has not in the past and does not now provide sufficient income to the debtors to enable them to satisfy this debt obligation. Further, the evidence is clear that the allowed secured claim of the Bank is approximately $100,000 and the allowed unsecured claim is well over $200,000. Based on all of the evidence, this Court must consider the feasibility of an effective reorganization by these debtors.

The conclusion of the Court is this property is not necessary to an effective reorganization because no effective reorganization is possible.

Even if the Court determined that an effective reorganization were possible, the

offer of adequate protection made by debtors is insufficient. First, they have failed to comply with the minimum requirements of the mortgage document which included keeping the property insured for the benefit of the creditor. Although this is a simple enough procedure and the debtors can easily obtain the appropriate supplemental policy, they have not done so as of the date of the hearing.

Secondly, the debtors have offered a monthly adequate protection payment of $550 and tendered a money order in the amount of $550. Such offer is inadequate. The minimum monthly payment required to protect the interest of the creditor is $700 per month and the debtor would be required to make a lump sum payment of $1,400 to make up for the decline in value of the collateral since the filing of the petition plus a prospective payment of $700 for the assumed decline in value during the next month.

No evidence was presented that the debtors were capable of making the immediate payment of $2,100 and $700 per month thereafter.

The Court concludes that the creditor has met its burden under § 362(d)(2) in that the evidence shows the debtors have no equity in the property. The debtors have failed to meet their burden concerning the necessity of the property for an effective reorganization and have failed to meet their burden of showing their capability of making adequate protection payments.

Therefore, the motion of the Bank is sustained and the automatic stay if hereby lifted.

Separate journal entry shall follow.